# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**JO ANN PEARSON and HARLEY
PEARSON, JR. , individuals**

   **Plaintiffs,**

**v.**                    **Case No: 5:15-cv-43-Oc-PRL**

**WINNEBAGO INDUSTRIES, INC. and
FORD MOTOR COMPANY**

   **Defendants.**

_____

## ORDER

Plaintiffs, Jo Ann Pearson and Harley Pearson, Jr., purchased a recreational vehicle in 2014 that they now claim has various defects that affect its use, value, and safety.   Plaintiffs' Amended Complaint asserts claims against Defendants, Winnebago Industries, Inc. ("Winnebago") and Ford Motor Company ("Ford"), for breach of express warranty under the Magnuson-Moss Warranty Act ("MMWA").   (Doc. 20).   Both Defendants have now filed motions for summary judgment (Docs. 77 & 81), and Winnebago has also filed a motion to exclude the testimony of Plaintiffs' putative expert, George Agutter.   (Doc. 80).

For the reasons discussed below, summary judgment is due to be granted in favor of both Defendants because there is no triable issue of fact as to any unrepaired defect.   Absent proof of this essential element, Plaintiffs do not establish their claims for breach of express warranty.[1]

_____

[1] Defendants raise several other arguments as to why summary judgment should be granted. However, the Court need not address the alternative arguments because the lack of an unrepaired defect is dispositive.

## I.    UNDISPUTED FACTS

Plaintiffs bought their 2014 Itasca Sunstar 27N (the "RV") on February 8, 2014, from Camping World RV Sales located in Holiday, Florida.   (Doc. 20, Exhibit A; Affidavit of Jo Ann Pearson dated 8/19/16 ("Pearson Affidavit")[2] at ¶3).   Ford built the chassis of the RV and Winnebago built the body, for which they each issued separate express limited warranties. (Deposition of Jo Ann Pearson dated 2/16/16 ("J. Pearson depo") at 43:15-22; 44: 5-8; 45:1-6; 100:6-23;[3] Deposition of Harley Pearson dated 2/16/16 ("H. Pearson depo") at 5:3-25; 6:1-3).[4] Plaintiffs assert claims under both warranties.

### A.    Ford Warranty Claims

As to the Ford Warranty (Doc. 77-1), Plaintiffs complain that there is excessive play in the steering wheel[5], which, according to them, makes it difficult for them to keep the RV on the road (and not tip over) when traveling over 50 mph and when passed by semi-trucks on the interstate. (Doc. 20, ¶15; J. Pearson depo at 24:5-25; 25:1-5; 26:10-25; 28:1-21; 38: 13-19, 40:3-14; H. Pearson depo at 5:3-25; 6:1-3, 14-18; 9:16-25; 10:1-3).   Ford contends, however, that Plaintiffs have failed to establish a defect in the steering.   The Court agrees.

According to Mrs. Pearson, although she was dissatisfied with the RV's loose steering during the test drive, she and her husband nonetheless purchased the RV based on assertions by the salesman at Camping World that the steering could be tightened, and in fact, that it had been

---

[2] The Pearson Affidavit is filed at Doc. 88.
[3] Mrs. Pearson's deposition is filed at Doc. 52.
[4] The deposition of Harley Pearson is filed at Doc. 53 ("H. Pearson depo").   Mr. Pearson testified that he defers to his wife on the issues related to the RV and this litigation.   (H. Pearson depo at 5:4-21; 15:15-16:10).
[5] Mrs. Pearson explained excessive play in the steering wheel meant that she could move the steering wheel to the right or to left, but that the wheels did not respond unless she made an exaggerated movement.   (J. Pearson depo at 24: 5-25 and 25: 1-13).

tightened.   (Pearson Affidavit at ¶10; J. Pearson depo at 31:24-32:20).   Mrs. Pearson testified, however, that during the drive from the dealership to Ocala, Florida, the steering was so loose that she had difficulty keeping the RV on the road, and that she was run off the road by a passing semi-truck.   (Pearson Affidavit at ¶12; J. Pearson depo at 34:17-25; 35:1-8).

Plaintiffs then took the RV to Camping World in Ocala to address, among other things, the steering issue.   Camping World sent the RV to Ford of Ocala (J. Pearson depo at 45:7-20), but Plaintiffs were later advised by Camping World that nothing had been done to the RV's steering because Ford of Ocala didn't have the necessary equipment to work on RVs.   (J. Pearson depo at 46:9-15; 48:7-19).

Mrs. Pearson testified that she discovered through online research a steering stabilizer called a Safe-T-Plus, that could purportedly help the RV track and stay in its lane.   (J. Pearson depo at 53:1-21).   Plaintiffs purchased the Safe-T-Plus from Camping World in Ocala, where it was installed.   (J. Pearson depo at 54:4-10).

On April 9, 2014, while traveling in the RV to Virginia, Plaintiffs stopped at Camping World in St. Augustine because they were having significant steering issues and the RV was being pushed off the highway by semi-trucks.   (J. Pearson depo at 54:20-58:2).   There they were told by the service department that their tow car was hooked up incorrectly and that it was lucky that they had not lost it.   (J. Pearson depo at 58:3-60:25).   They were also told that the RV was not safe to drive because the front end was out of alignment.   (J. Pearson depo at 58:3-60:25).   Plaintiffs spent the night at Camping World and the RV was aligned the next day.   (J. Pearson depo at 60:25-61:12).

Initially, Plaintiffs thought that the RV was driving better, but the steering again became a problem on the interstate.   (J. Pearson depo at 61:20-23).   So, they took the RV to a TA Truck

Stop in Georgia.   (J. Pearson depo at 61:25-62:12).   A mechanic looked under the RV and told Plaintiffs that the RV had a problem with the springs and bushings.   (J. Pearson depo at 47:16-22; 115:24-116:9).   Plaintiffs then traveled a short distance to a Georgia Ford dealership that had the equipment to work on trucks and RVs.   (J. Pearson depo at 64:12-21).   A mechanic at the Georgia dealership put the RV on a lift, looked at it, pulled it down, and drove it for a few minutes.   (J. Pearson depo at 64:12-18).   The mechanic then advised Plaintiffs that "there was nothing wrong with it."   (J. Pearson depo at 64:22-65:8).   The mechanic also explained that the RV dealer was wrong in telling Plaintiffs that the steering could be tightened up and that there was no bolt to tighten up.   (J. Pearson depo at 65:16-66:9).   Rather, the steering came from the factory with "varying levels of play" and Plaintiffs' RV fell within the acceptable range.   (J. Pearson depo at 65:16-66:5; 71:5-19).

In May 2014, Camping World in Ocala sent the RV to Gator Ford in Tampa to have the steering evaluated.   Although Plaintiffs had no direct communication with Gator Ford, Camping World in Ocala conveyed to Plaintiffs that Gator Ford had explained that there was a spectrum of range of play in the steering and that Plaintiffs' RV fell within that spectrum.   (J. Pearson depo at 48: 14-25; 71:5-22).

Plaintiffs subsequently requested that Camping World in Ocala take the RV to an independent repair facility – B&M Automotive – to have the steering evaluated.   B&M Automotive also determined that the steering was normal.   (J. Pearson depo at 92:9- 93:10).

On August 3, 2015, Ford's Field Service Engineer, Chris Hall, inspected the RV related to Plaintiffs' complaints about the steering of the RV.   *(Affidavit of Chris Hall dated 3/24/16 ("Hall Affidavit") at p. 2, ¶5; p. 4, ¶¶ 15-16; Deposition of Christopher Garfield Hall dated 5/31/16 ("Hall*

depo") at 24:13-21).[6]   Mr. Hall test drove the RV at speeds up to 70 mph and he had no difficulty controlling it.   (Hall Affidavit at ¶17).   Indeed, he did not experience any symptoms of an alignment issue or problems with the steering, and found that the RV's steering performed as designed.   (Hall Affidavit at ¶17).   He also inspected the steering components and tires of the RV and found no concerns.   (Hall Affidavit at ¶19).   He opined that the RV is not suffering from a defect in workmanship covered by Ford's Warranty.   (Hall Affidavit at ¶21).   Mr. Hall noted that the RV is a large vehicle and that it "would not be unusual for someone who is inexperienced in driving a vehicle of this type and size to have some difficulty with the steering."   (Hall Affidavit at ¶20).

On March 28, 2016, Plaintiffs' purported expert, George Agutter, inspected the RV.   *See* Inspection Report of 2B Limitless RV Inspections, LLC ("Agutter Report").[7]   Mr. Agutter did not take the RV for a test drive to evaluate the steering.[8]   Instead, he simply observed that "[a]t idle and in Park, the steering wheel [had] excessive play before the tires responded."   He stated that: "During highway speeds this could cause a safety issue in the steering and control of the RV."   He then recommended "further evaluation by a certified Ford Truck/RV center or heavy equipment center."   He did not opine that a defect was present.

### B.      Winnebago Warranty Claims

Winnebago manufactured the "coach" portion of the RV and issued an express limited warranty.   (Doc. 20, Ex. B).   In the Amended Complaint, Plaintiffs allege that the air conditioner

---

[6] Mr. Hall's Affidavit is filed at Doc. 54 and his deposition is filed at Doc. 71.
[7] The Agutter Report is filed as Exhibit A to Doc. 80.
[8] Mr. Agutter testified that he did accompany Plaintiffs on a short drive in the parking lot, and he did not note the drive in his report because it was "strictly just to appease . . . the [Plaintiffs]."   Agutter depo at 109:20-110:7; 110:23-111:5.

fan, air mattress, passenger side and driver side windows, mirror, screws, windshield wipers, shades, freshwater water tank, and slide-outs are defective, are covered under the Winnebago Warranty, and affect the use, value, and safety of the RV.   (Doc. 20, ¶8).   The majority of these alleged defects have been repaired or otherwise addressed and are no longer at issue.[9]   Indeed, Mrs. Pearson testified that the only current problems for which Winnebago is responsible under the Warranty are the slide-outs (a large one and a small one).   (J. Pearson depo at 167:13-168:12; Doc. 89 at 6-7 (arguing that summary judgment should not be granted because Plaintiffs have identified symptoms of a defect in the slide-out of the coach)).

On April 25, 2014, Plaintiffs took the RV to Camping World in Ocala and complained that the large slide-out was making terrible noise during travel.   (Doc. 81-1 at 262).   According to the work order, the passenger side front end of the slide-out was rubbing so lubrication was applied. *Id.*   After a test ride, the mechanics noted "all ok."   *Id.*   However, the work order reflects that

---

[9] Mrs. Pearson testified that she believes Winnebago repaired the following alleged defects: air conditioner (J. Pearson depo at 43:11-12; 45:12 – 20; 128:22 – 129:1); air mattress (J. Pearson depo at 129:6-8); passenger side window (J. Pearson depo at 129:11-19); driver side mirror (J. Pearson depo. 131:23-132:4); broken or loose screws (J. Pearson depo at 132:5-9); windshield wipers (J. Pearson depo 132:10-16).   With respect to the alleged mark on the back of the driver seat, Mrs. Pearson stated it is not noticeable and she "wasn't really worried about it."   (J. Pearson depo at 134:3 – 18).   As for the driver side window and shades, she testified that Winnebago had ordered a new driver side window and shades, but that Plaintiffs had not taken the RV to the dealership for installation because they were waiting for this case to be resolved. (J. Pearson depo at 129:11- 131:19; 137:3-19).   Accordingly none of these c

With respect to the freshwater tank, Mrs. Pearson testified that the dealership replaced the knob for the water tank at the service on April 25, 2014, and she presumes that it is repaired, but she hasn't used it so she does not know if it works.   (J. Pearson depo at 151:24- 152:7).   However, in her Affidavit filed in response to the motion for summary judgment, Plaintiff avers for the first time that she has observed that the freshwater fill tank does not accept water when it is operated.   (Pearson Affidavit at ¶27).   When Mr. Hamme inspected the RV in August 2015, he found that the "fill valve operated to fill and stop filling the water tank" and that "the valve operated as designed."   (Hamme Report at 2).   Mr. Agutter inspected the RV more than eight months later and noted that the plastic handle for the fresh water fill valve was stripped mostly due to "wear and tear."   (Agutter Report at 11; Agutter depo at 95:3-12).   Mr. Agutter testified that this could be a major issue because if the valve is stuck in the fill position, no water would go to the house system; however, he clarified that he had seen no indication of that in this RV.   (Agutter depo at 95:13-21).   Accordingly, there is no evidence supporting an unrepaired freshwater tank defect.

the RV did not leave Camping World and Plaintiffs again complained that the slide-out was making a popping noise and shifting back and forth.   *Id.*   Mechanics applied additional lubrication and repaired a broken pin in the rear motor.   *Id.*   They then took the RV for a test drive and noted that no popping, shifting noise was present.   *Id.*   Plaintiffs took the RV home in June 2014, and according to Mrs. Pearson, the noise was gone.   (J. Pearson depo at 163:3-18). Plaintiffs have not brought the RV back to any dealer for any further diagnosis or repair since June of 2014.   (J. Pearson depo at 163:14-22).   Mrs. Pearson concedes that Winnebago has never denied any request to repair or service the RV.   (J. Pearson depo at 157:20-158:5).

On August 3, 2015, Winnebago's expert, Steven Hamme, conducted an inspection and test-drive of the RV.   *See* Inspection Report of Steven Hamme ("Hamme Report.").[10]   Mr. Hamme operated the large slide-out several times during the inspection and found that it operated as designed without any abnormal noises.   (Hamme Report at 2).   He also found that there was no abnormal noise or banging while driving at highway speeds or when making turns at lower speeds. (Hamme Report at 2).

At her deposition on February 16, 2016, Mrs. Pearson testified that the large slide-out had again started to make some noise.   (J. Pearson depo at 146:4-7; 163:3-18).   She also testified that the slide-out was not going all the way in and that it was not fully flush with the rest of the coach when it was fully retracted.   (J. Pearson depo at 146:8-18; Pearson Affidavit at ¶26).   Plaintiffs did not take the RV to the dealership related to these concerns.   (J. Pearson depo at 163:14-22). Plaintiffs' purported expert, Mr. Agutter, examined the RV on March 28, 2016.   He noted that the rear of the large slide-out did not fully close and stuck out more than the front of the slide.

---

[10]  The Hamme Report is filed as Exhibit D to Doc. 81.

(Agutter Report at 27).   He suggested that this could be a safety issue during travel because it would allow "the rear of the slide-out to be free and extend causing the slide to bind."   *Id.*   He recommended further evaluation by a certified Schwintek Technician.   *Id.*

At her deposition, Mrs. Pearson also reported for the first time that the smaller slide-out had little curly pieces of metal and wood on the floor where she let the room out and put it back in.   (J. Pearson depo at 152:13-22).   However, Plaintiffs admittedly have never taken the RV to the dealership for any concern related to the smaller slide-out.   (J. Pearson depo at 157:1-4).

## II.    SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable" to the nonmoving party.   *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).   As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.   If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).   The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant.   *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).   Which facts are material depends on the underlying

substantive law.   *Id.*   "A court need not permit a case to go to a jury ... when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'"   *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 743 (11th Cir.1996).

## III.   DISCUSSION

Magnuson–Moss does not require manufacturers of consumer goods to provide warranties, rather it creates specific duties and liabilities for the manufacturer that chooses to do so. *Cunningham v. Fleetwood Homes of Ga.,* 253 F.3d 611, 617 (11th Cir.2001); *see* 16 C.F.R. § 700.3.   It provides consumers who are damaged by the failure of a supplier, warrantor, or service contractor to comply with the Act with a private right of action in either state or federal court.   15 U.S.C. § 2310(d).   "[E]xcept in the specific instances in which Magnuson–Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law."   *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1012 (D.C.Cir.1986).   Magnuson-Moss supplements, rather than supplants state law.   *See* 15 U.S.C. § 2311(b) ("Nothing in this chapter shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law").   Therefore, a federal court applies state law to Magnuson-Moss claims for breach of written and implied warranties.   *Bailey v. Monaco Coach Corp.,* 350 F.Supp.2d 1036, 1040 (N.D.Ga.2004).   Here, there is no dispute that Florida law applies.

By offering a warranty, a manufacturer recognizes that items, even those found in a new product, may sometimes fail.   However, a warranty itself is not breached simply because a defect occurs.   *See Lennar Homes, Inc.,* 32 F.Supp.2d at 404.   Under Florida law, a warrantor is permitted to limit the remedies under a warranty to the repair or replacement of defective parts; however, if the warranty fails of its essential purpose, the consumer may seek to recover any remedy provided by Florida law.   Fla. Stat. § 672.719 (1)(a) & (2).   Such a warranty fails of its

essential purpose if the warrantor does not successfully repair defects within a reasonable time or within a reasonable number of attempts.   *See Typographical Service, Inc. v. Itek Corp.,* 721 F.2d 1317, 1320 (11th Cir.1983); *Bailey v. Monaco Coach Corp.,* 350 F. Supp. 2d 1036, 1044 (N.D. Ga. 2004), *aff'd*, 168 F. App'x 893 (11th Cir. 2006).

In order to establish that a warrantor breached a repair-or-replace limited warranty, a plaintiff must prove that: (1) a covered defect existed in the product at the time of sale; (2) notice of the defect was given to the warrantor within a reasonable time after the defect was or should have been discovered; (3) the warrantor was unable to repair the defect after a reasonable time or a reasonable number of attempts; (4) and the plaintiff sustained damages as a proximate result of the warrantor's failure to comply with the terms of the warranty.   *See* Fla. Stat. § 672.607(3)(a); *Bailey,* 350 F. Supp. 2d at 1044.

## A.    Ford's Motion for Summary Judgment

There is no genuine issue of material fact as to the existence of an unrepaired defect covered under Ford's limited warranty.   While Plaintiffs have testified that they had trouble steering the RV, they have failed to offer any evidence showing that the steering is not operating as intended or that it fails to meet industry standards.   To the contrary, the uncontested evidence suggests that the RV's steering is operating without defect.   Indeed, both Ford dealerships that examined the RV found that there was nothing wrong with the steering and that the steering fell within the acceptable range of play.   (J. Pearson depo at 71:5-22).   Likewise, the independent repair facility – B&M Automotive –found that the steering was normal.   (J. Pearson depo at p. 91, line 25; p. 92, lines 1-15; p. 92, lines 1-10; p. 93, lines 2-10).   And Ford's Field Service Engineer, Chris Hall, also found no problems with the steering and opined that the RV's steering performed as designed.

(Hall Affidavit at ¶¶ 17, 19, 21; Hall depo at 24:13-21).[11]   Mrs. Pearson acknowledged that she did not know anything about the steering system failing, and that she had never been told that the steering system was failing.   (J. Pearson depo at 107:15-22).

Plaintiffs cannot overcome the evidence of no defect simply by offering their own personal opinions that the RV's steering was not functioning properly.   *See e.g., Hines v. Mercedes-Benz USA, LLC*, 358 F.Supp.2d 1222, 1229 (N.D. Ga. 2005) (granting summary judgment on MMWA claim where defendant offered expert evidence of no defect and plaintiff "failed to come forward with any evidence of defects or refusal to repair or lack of success in repairing by Defendant except his own opinion that the vehicle is defective."); *Simpson v. Hyundai*, 603 S.E.2d 723, 727 (Ga. App. Ct. 2004) (affirming entry of summary judgment for defendant where the plaintiff "failed to come forward with any evidence of defects or refusal to repair or lack of success in repairing by [defendant] except their own opinions that their cars are defective"); *see also Evans v. Gen. Motors Corp.*, 459 F. Supp. 2d 407, 414 (D. Md. 2006) (finding no genuine issue of material fact on MMWA claim when the plaintiff offered no evidence contradicting evidence submitted by the defendant's expert that the vehicle was currently operating without defect or malfunction).   But that is really all Plaintiff's attempt to do here: "[we] say it's defective and [Ford says] it's not." (J. Pearson depo at 104:13-20).

Further, like the functioning of an RV's slide-out (as discussed *infra*) or brake system, it cannot be said that the proper function of an RV's steering system is within the purview of a layperson, such as either plaintiff.   *Bailey v. Monaco Coach Corp.*, 350 F.Supp.2d 1036, 1045-46, (N.D. Ga. 2004), *aff'd*, 168 F. App'x 893 (11th Cir. 2006).   Instead, it must be established by

---

[11] Mr. Hall's Affidavit is filed at Doc. 54 and his deposition is filed at Doc. 71.

expert testimony.   *Id.*   But here, the report and testimony of Plaintiffs' purported expert neither shows a defect or otherwise creates an issue of fact as to defect.   While Mr. Agutter noted excessive play in the steering, he did <u>not</u> offer any opinion as to whether the steering was not operating as intended or whether it was the result of a defect.   He even conceded that he was not qualified to evaluate the RV's steering and handling and stated that if a Ford certified RV dealer evaluated the steering and found it to be normal, he would defer to that opinion.   (Agutter depo at 66:1-6; 69:7-13).   Significantly, as noted, at least two Ford RV dealers inspected the RV and concluded that the steering fell within the acceptable range of play.   (J. Pearson depo at 71:5-22).

Finally, Plaintiffs' contention that they need not prove the exact cause of a defect or malfunction is misplaced because it presupposes that they've presented enough evidence to first "establish that the alleged problem is truly a defect in the manufacture or materials used to manufacture" the RV.   *Bailey*, 350 F.Supp.2d at 1045.   Here, again, Plaintiffs don't actually establish a defect or malfunction; thus, the cases they cite for the proposition that they need not identify the precise cause of the defect simply don't apply.   (*See* Doc. 90 at 5-6, citing, for

example, *Mason v. Porsche Cars of North America, Inc.*, 688 So.2d 361, (Fla. App. Ct. 1997) and

*Armor Elevator Co. v. Wood*, 312 So. 2d 514, 515 (Fla. App. Ct. 1975)).[12]

Accordingly, summary judgment is due to be granted in favor of Ford because there is no

genuine issue of material fact as to an unrepaired defect covered by the Ford Warranty.

## B.    Winnebago's Motion for Summary Judgment

Likewise, Plaintiffs have failed to establish the existence of an unrepaired defect as to the

only remaining claims covered by the Winnebago Warranty – the slide-outs.

Here, the unrefuted evidence shows that Plaintiffs took the RV to Camping World on April

25, 2014, and complained that the large slide-out was making a terrible noise.   (Doc. 81-1 at 262).

After repairs were made, Plaintiffs took the RV home in June 2014, and according to Mrs. Pearson,

the noise was gone.   (J. Pearson depo at 163:16-164:9).   More than one year later, in August

2015, Winnebago's expert, Steven Hamme, conducted an inspection and test-drive of the RV.   He

operated the large slide-out several times during the inspection and found that it operated as

designed without any abnormal noises; and there was no abnormal noise or banging while driving

at highway speeds or when making turns at lower speeds.   (Hamme Report at 2).

---

[12] Also misplaced is Plaintiffs' reliance on *Ainsworth v. KLI, Inc.*, 967 So.2d 296 (Fla. App. Ct. 2007), which considered the application of a *Cassisi* inference. In certain circumstances, Florida law permits an inference of defect when an injured party is unable to come forward with evidence to prove the existence of a manufacturing or design defect. *See Cassisi v. Maytag Co.*, 396 So.2d 1140, 1143, 1148 (Fla. App. Ct. 1981) (applying inference of defect where clothes dryer inexplicably caught fire after less than two years of normal household use). "As explained by the Eleventh Circuit, *Cassisi* stands 'for the proposition that when a product malfunctions *that would not malfunction but for the defect*, a plaintiff is entitled to an inference of a defect.'" *Beauregard v. Continental Tire North America, Inc.,* 695 F.Supp.2d 1344, 1353 (M.D. Fla. 2010) (quoting *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 683 (11th Cir. 1984) (finding inference supported claim of defect in medical device where company had history of defects with the product and where expert ruled out other causes of plaintiff's infection)). While Plaintiffs cite *Ainsworth*, they do not argue that a *Cassisi* inference is applicable in this case. Moreover, Plaintiffs "have failed to put forward more than a scintilla of evidence that there is 'proof of a malfunction,'" which is required for the inference to even arise. *See Beauregard*, 695 F.Supp.2d at 1354 (finding Cassisi inference inapplicable in tire failure case where plaintiff failed to offer "proof of a malfunction").

Then, at her deposition on February 16, 2016, Mrs. Pearson reported that the slide-out had started to make noise again.   (J. Pearson depo at 146:4-7; 163:3-18).   She also testified that the living room slide-out was not going all the way in and that it was not flush with the rest of the coach when it was fully retracted.   (J. Pearson depo at 146:8-18; Pearson Affidavit at ¶26).   Mrs. Pearson also reported for the first time that the smaller slide-out had little curly pieces of metal and wood on the floor where she let the room out and put it back in.   (J. Pearson depo at 152: 13-22).   But, Plaintiffs admittedly did not take the RV to the dealership related to any of these concerns.   (J. Pearson depo at 157:1-4; 163:14-22).   And Mrs. Pearson concedes that Winnebago has never denied any request to repair or service the RV.   (J. Pearson depo at 157:20-158:5).

Plaintiffs contend that their testimony – which is confirmed by their purported expert – is sufficient to create an issue of fact as to defect.   They claim that they have identified "an instability in the slide room which they describe as a movement of the slide within the walls of the coach when no such movement is desired" and "disconcerting noises from the slide during travel," which a finder of fact could conclude are malfunctions or defects.   (Doc. 89 at 6-7).   Again, while Plaintiffs are not required to prove the specific cause of a defect, there must be sufficient proof that the "alleged problem is truly a defect in the manufacture or materials used to manufacture the motorhome."   *Bailey,* 350 F.Supp.2d at 1045.

While Plaintiffs' testimony may be sufficient to establish that the slide-outs are not operating as desired, it is not sufficient to show that the alleged slide-out defects are covered defects under the warranty.   *See McLaughlin v. Monaco, RV LLC,* No. 8:14-cv-703-T-36TGW, 2015 WL 5355465, at *4 (M.D. Fla. September 14, 2015).   Indeed, courts in the Eleventh Circuit have held that alleged defects in RV slides are not within the reasonable purview of the average layperson, such that the trier of fact would not likely be able to determine what constitutes a defect.

*Bailey*, 350 F. Supp. 2d at 1046. Thus, "absent expert testimony concerning such things as the proper functioning of [RV] slide[s] or industry standards for slide[s] a *defect cannot be inferred.*" *Id*; *see also McLaughlin,* 2015 WL at *4 (finding that plaintiffs could not establish a defect without testimony of an "expert witness regarding what constitutes a covered defect in the [slide], RV industry standards and the mechanics associated with an RV"); *Davenport v. Thor Motor Coach, Inc.,* No. 3:14–cv–537–J–25PDB, Doc. 46, p. 13-15 (M.D. Fla. August 6, 2015) (holding that plaintiffs failed to establish with competent evidence that a slide defect remained, where plaintiffs did not offer expert testimony of proper RV functioning or RV industry standards and plaintiffs did not possess technical knowledge or special training in RV mechanics or RV industry standards to rebut the defendant's expert opinion).

Likewise, the inspection report and testimony of Plaintiffs' purported expert, Mr. Agutter, does not create an issue of fact. As an initial matter, Winnebago argues that Mr. Agutter's opinion should be excluded under Federal Rule of Evidence 702 because he lacks the necessary technical qualifications, his methodology is unreliable, and his opinions and conclusions will not assist the trier of fact. (Doc. 80). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), the Supreme Court set forth the criteria for evaluating the admissibility of an expert's opinion under Rule 702.

However, in this case, the Court need not conduct a substantive *Daubert* analysis because at the most basic level, Mr. Agutter has not offered any opinion regarding the existence of a manufacturer's defect.[13] That is, an analysis of his qualifications or methodology seems

---

[13] Additionally, there is no need for the Court to conduct a hearing simply because Winnebago invoked a *Daubert*-type objection. *See, e.g., Corwin v. Walt Disney Co.,* 475 F.3d 1239, 1252 n. 10 (11th Cir.2007) ("although they are often helpful hearings are not prerequisite to such determinations under the Federal Rules or established law"); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.,* 402 F.3d 1092, 1113 (11th Cir.2005).

unnecessary because at the end of the day, he offers no opinion of any actual defect.   Mr. Agutter simply observed that when the large slide-out was retracted, the rear of the slide-out did not lock into place and remained extended out approximately a quarter of an inch.   He noted that this would be a safety issue during travel and recommended further evaluation by a certified Schwintek Technician.   As to the small slide-out, he offered even less: he made no observations, made no recommendation, and similarly offered no opinion of a defect.

At most, Mr. Agutter identified a <u>potential</u> problem with the operation of the large slide-out on the day of his inspection.   However, and unfortunately for Plaintiffs, he offered no opinion as to whether this constituted a defect, nor did he opine as to proper RV functioning or industry standards for slide-outs.   Without expert testimony concerning such things as the proper functioning of RV slide-outs and industry standards, a defect in the slide-out cannot be inferred from the mere fact that the rear of the slide-out did not lock into place (or that Plaintiffs saw small shavings of metal and wood near the small slide-out).   *See Bailey*, 350 F. Supp. 2d at 1046 ("absent expert testimony concerning such things as the proper functioning of motorhome slide-outs or industry standards for slide-out alignment, a defect in the slide-out cannot be inferred from the presence of a small gap" when the slide-out was closed.)

As such, there is no triable issue regarding the existence of a defect here either.

## IV.    CONCLUSION

While Plaintiffs have complaints regarding the RV, they have failed to create any issue of fact as to a manufacturer's defect.   It is not enough, as to either the steering or the slide-outs, for Plaintiffs to make complaints, without offering any evidence that the "alleged problem is truly a defect in the manufacture or materials used to manufacture the motorhome." *Id*.   Accordingly, Ford Motor Company's Motion for Summary Final Judgment (Doc. 77) is **GRANTED** and Winnebago Industries, Inc.'s Motion for Final Summary Judgment (Doc. 81) is **GRANTED**.   The

Clerk shall enter judgment in favor of Defendants, terminate all pending motions, and close the file.

**DONE** and **ORDERED** in Ocala, Florida on November 23, 2016.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties